[Crim. No. 20307. First Dist., Div. Three. Feb. 2, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE REYNOLDS, Defendant and Appellant.

**COUNSEL**

John Raymond, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Charles James and Carol M. Slatin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCOTT, J.—Appellant Willie Reynolds pled guilty to robbery and admitted the use of a gun during commission of this offense. He was committed to the California Youth Authority (CYA). Some months later, he was returned to court and sentenced to prison. He was given credit against his prison sentence for time spent under the control of the Youth Authority. ■ He now contends he should also be entitled to conduct credit against his sentence for time spent with the Youth Authority. We disagree.

Appellant was returned to the court and sentenced pursuant to Welfare and Institutions Code section 1737.1, which provides in pertinent part: "Whenever any person who has been convicted of a public offense in adult court and committed to . . . the Youth Authority appears to the Youthful Offender Parole Board . . . to be an improper person to be retained by the Youth Authority, or to be so incorrigible or so incapable of reformation under the discipline of the Youth Authority as to render his or her detention detrimental to the interests of the Youth Authority and the other persons committed thereto, the board may order the return of such person to the committing court. The court may then commit him to a state prison or sentence him to a county jail as provided by law for punishment of the offense of which he was convicted. The maximum term of imprisonment for a person committed to a state prison under this section shall be a period equal to the maximum term prescribed by law for the offense of which he was convicted *less the period during which he was under the control of the Youth Authority.*" (Italics added.) The statute does not authorize any kind of good time or conduct credit for that period of control.

Appellant makes no mention of Welfare and Institutions Code section 1737.1. Instead, he relies on Penal Code sections 2900.5 and 4019. Section 2900.5, subdivision (a), provides in part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including. . . any time spent in a . . . juvenile detention facility, . . . all days of custody of the defendant, . . . including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his term of imprisonment." Section 4019 authorizes good behavior and work performance credit for certain prisoners confined in city and county jails, industrial farms, or road camps. Appellant acknowledges that on its face section 4019 does not

authorize conduct credit during a Youth Authority commitment. Nonetheless, he urges that because CYA commitment is "custodial" he is entitled to such credit. Appellant's complaint in essence is that he is denied equal protection because he is excluded from eligibility for this credit.

Welfare and Institutions Code section 1731.5 divides one class of individuals, persons convicted of a public offense, into two groups: those under 21, such as appellant, who may be committed to the Youth Authority if otherwise eligible, and those subject to the normal range of dispositional alternatives, including prison. (See *People* v. *Olivas* (1976) 17 Cal.3d 236, 240 [131 Cal.Rptr. 55, 551 P.2d 375].) The individual convicted as an adult, committed to the Youth Authority, but subsequently found unsuitable for continued commitment, can be returned to court and sentenced to jail or prison. Such an individual can only earn conduct credit against that portion of his confinement spent in prison, while the individual immediately sentenced to prison can earn conduct credit against his entire sentence. (Pen. Code, §§ 2931, 4019; *People v. Sage* (1980) 26 Cal.3d 498, 506 [165 Cal.Rptr. 280, 611 P.2d 874].) It is this distinction that is the basis of appellant's complaint.

First, we reiterate that appellant was returned from the Youth Authority and sentenced pursuant to section 1737.1, and at least one court has said that resort to that section is to be had only when the case is one that, in the opinion of the authority, is "completely hopeless." (*People* v. *Scherbing* (1949) 93 Cal.App.2d 736, 741 [209 P.2d 796], disapproved on other grounds in *People* v. *Olivas* (1976) 17 Cal.3d 236, 257 [131 Cal.Rptr. 55, 551 P.2d 375].) We view appellant's claim of entitlement to credit for good behavior while at the Youth Authority as logically inconsistent with his rejection from that institution as incorrigible.

Moreover, as we will explain, we also reject appellant's claim because we have concluded that youthful felons are not entitled to behavior credits while confined at the Youth Authority, and are therefore not entitled to such credits against a subsequent sentence.

In *People v. Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92], a defendant committed as a mentally disordered sex offender (MDSO) argued in part that had he been sentenced as a criminal rather than committed as an MDSO, he would have been eligible to

receive conduct credits pursuant to Penal Code section 2930 et seq.;[1] he argued that exclusion from that benefit denied him equal protection. The Supreme Court disagreed. The court first restated the test to be applied in a review of legislative classifications under the equal protection clause: once it is established that a classification scheme affects a fundamental interest, the state must establish that it has a compelling interest which justifies the law, and then demonstrate that the distinctions drawn by the law are necessary to further that purpose. (25 Cal.3d at p. 228.) After acknowledging that the defendant's fundamental liberty interest was at issue, the court held that the state has a compelling interest in identifying and providing effective medical attention to those amenable to treatment who commit sexually motivated criminal acts, and in assuring the safety of the public. That compelling interest justifies the legislative determination not to expand the application of good time procedures to MDSO commitments. (*Id.*, at p. 235.)

The court enumerated reasons for that determination. First, the concept of giving or taking away credits might interfere with therapy. Second, even without conduct credit, acceptable behavior in the hospital is encouraged by the possibility that the disruptive patient can be determined unamenable to treatment, and transferred to prison. Third, part of prison "good time" may be earned by participating in certain programs which may be unavailable in a hospital. Fourth, denial of "good time" credits involves an array of administrative requirements with which hospital personnel may be unable to comply; moreover, an administrative adversary proceeding might not further treatment. Finally, the concept of "good time" credit does not make sense in the context of an indefinite medical commitment period which can be extended if necessary. (*Saffell*, 25 Cal.3d at p. 234.)

In *Sage*, the court relied on *Saffell* and held that a defendant committed as an MDSO, then sentenced to prison, is not entitled to conduct credit against that prison sentence pursuant to Penal Code sections 2900.5 and 4019 for the period of his MDSO commitment. In effect, the court held that because an MDSO cannot earn conduct credit at all during his commitment, he clearly is not entitled to conduct credit against a subsequent prison sentence for that commitment.

---

[1]According to Penal Code section 2930 et seq., a prisoner can receive a one-third reduction of his sentence for good behavior and participation.

A similar analysis is applicable here. As in *Saffell*, at issue is appellant's fundamental liberty interest.[2] Thus the question is whether the state has a compelling interest which justifies the legislative determination to exclude those in appellant's class from conduct credits. The Legislature has declared that the purpose of the Youth Authority Act is to "protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses." (Welf. & Inst. Code, § 1700.) The Supreme Court has recently emphasized that the purpose of a Youth Authority commitment is treatment and rehabilitation; the court noted that with the enactment of the Determinate Sentencing Act, the distinction between prison sentence and Youth Authority commitment has been significantly sharpened. The purpose of imprisonment, once "deterrence, isolation and rehabilitation," has now been declared to be punishment; in contrast, the purpose of commitment to the Youth Authority remains treatment and rehabilitation. (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].) The strong public policy in favor of attempting to rehabilitate youthful offenders whenever possible requires that in every criminal case involving those eligible for Youth Authority commitment, the court must, on its own motion if necessary, consider whether the defendant could benefit from referral to the Youth Authority. (*People* v. *Moran* (1970) 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Sparks* (1968) 262 Cal.App.2d 597, 599 [68 Cal.Rptr. 909].)

From these legislative and judicial expressions, we conclude that the state has a compelling interest in providing rehabilitative services for those amenable to the care, treatment and training programs available through its Youth Authority facilities.[3] We then consider whether that

[2]In *In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], a minor argued that Welfare and Institutions Code section 726 denied him equal protection by providing that the maximum term of confinement for a juvenile is the longest term imposable upon an adult for the same offense, *without* the necessity of finding circumstances in aggravation justifying imposition of the upper term. The court disagreed, in part because they concluded that the liberty interest of a minor is subject to greater regulation than is that of an adult. Therefore, adults convicted in criminal courts and sentenced to prison, and youths adjudged wards of the court and committed to the Youth Authority are not "similarly situated" for purposes of equal protection analysis. The same analysis cannot be used here, as appellant is an adult, not a minor.

[3]See also *People* v. *Olivas, supra,* 17 Cal.3d 236, in which the court *assumed arguendo that the rehabilitation of youthful offenders was a compelling state interest,* but concluded that interest did not justify the legislative scheme which permitted a youthful offender convicted as an adult in adult courts to be committed to the Youth Authority for a term potentially longer than the maximum jail term which might have been imposed for the same offense.

compelling state interest justifies the legislative determination not to impose "good time" procedures on Youth Authority commitments. (See *Saffell, supra*, 25 Cal.3d at p. 235.)

The primary purpose of prison or jail behavior credits is to encourage conformity to prison regulations, to discourage criminal assaultive acts while in custody, and to encourage participation in rehabilitative activities. (*Saffell*, 25 Cal.3d at p. 233.) We acknowledge that unlike the hospital to which the MDSO is committed, the Youth Authority has educational, vocational and rehabilitative programs, enrollment in which is not only available but may be compelled. We also acknowledge that unlike hospital personnel, Youth Authority personnel would not find the administrative aspect of the behavioral credit system to be an alien task. However, notwithstanding the above, we conclude that to superimpose the Penal Code's behavior credit scheme on the Youth Authority is to provide the youthful felon with what he already has: the opportunity to reduce his time in confinement because of his conduct. The fact that a youthful felon in the Youth Authority is not given Penal Code behavior credits does not mean that he is denied recognition and reward for good behavior. Participation in rehabilitative programs and behavioral conformity is encouraged and rewarded in Youth Authority commitments because of the indeterminate nature of the commitment itself, with release at the discretion of the Youthful Offender Parole Board. That board is to discharge each person as soon as in its opinion there is reasonable probability that he can be given full liberty without danger to the public. (Welf. & Inst. Code, §§ 1765, 1766.) Moreover, in addition to the incentive of early release, the board's authority to order the return of an incorrigible to the court for sentencing serves as a deterrent to unacceptable behavior. (Welf. & Inst. Code, § 1737.1.) Finally, while the concept of a uniform system of conduct credits is a logical corollary of a determinate sentencing scheme, that concept makes no sense when there is no fixed term from which conduct credit can be subtracted. For these reasons, we conclude that the state's compelling interest in rehabilitating youthful offenders justifies the legislative determination not to expand the application of "good time" procedures to Youth Authority commitments. (See *Saffell* at p. 235.)

Accordingly, there is no denial of equal protection in excluding those committed to the Youth Authority from the conduct credit scheme of the Penal Code. Furthermore, as such individuals cannot earn conduct credits at all, they are not entitled to such credits against a subsequent prison sentence. (See *Sage*, 26 Cal.3d at p. 505.)

We also recognize that other courts have ordered the award of precommitment conduct credits to those committed to the Youth Authority. (*In re Eugene R.* (1980) 107 Cal.App.3d 605, 621 [166 Cal.Rptr. 219]; *In re Maurice S.* (1979) 90 Cal.App.3d 190 [153 Cal.Rptr. 317].) However, we note that in each the court considers only entitlement to precommitment credit without first considering the more basic question of whether conduct credit can be earned at the Youth Authority at all.

In sum, confusion about conduct credit continues. Nonetheless, we conclude that neither Welfare and Institutions Code section 1737.1, Penal Code section 4019, nor equal protection principles entitle this appellant to conduct credit against his prison sentence for the time spent under the control of the Youth Authority.

Appellant's contention that his plea bargain was breached when he was sentenced to prison is without merit. No promises were made with respect to sentencing when appellant pled guilty, and certainly he was not told that if committed to the Youth Authority and later found unsuitable, he could withdraw his plea.

Appellant's contention that his prison sentence in some way placed him in double jeopardy is also without merit. The purpose of the double jeopardy prohibition is directed to the elimination of the burden of multiple prosecutions. (*In re Bryan* (1976) 16 Cal.3d 782, 787 [129 Cal.Rptr. 293, 548 P.2d 693].) Appellant was prosecuted only once for this offense.

Judgment is affirmed.

White, P. J., concurred.

**FEINBERG, J.**—I dissent from the decision of this court insofar as it denies behavioral (good time/work time) credits to appellant, assuming he earned them during his incarceration in the Youth Authority facility. It appears to me that equal protection principles demand that appellant be entitled to such credits if he has earned them.