[Crim. No. 15817. Fourth Dist., Div. One. Oct. 22, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE PAUL CARUSO, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Certified for publication with the exception of part II.

**COUNSEL**

Arlin Armstrong, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WIENER, Acting P. J.**—Effective January 1, 1983, the Legislature substantially revised the statutory scheme for sentence reductions (see Stats. 1982, ch. 1234) amending Penal Code sections 2930, 2931, 2932 and 4019, and adding sections 2933, 2934, and 2935.[2] Section 2933 now provides a prisoner with the opportunity to cut his sentence in one-half by participating in authorized work programs.[3] This is a more generous formula than that

---

[2]All statutory references are to the Penal Code.

[3]Section 2933 provides in part: "(a) It is the intent of the Legislature that persons convicted of crime and sentenced to state prison, under Section 1170, serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training or education programs established by the Director of Corrections. Worktime credits shall apply for performance in work assignments and performance in elementary, high school, or vocational education programs. Enrollment in a two-or four-year college program leading to a degree shall result in the application of time credits equal to that provided in Section 2931. *For every six months of full-time performance in a credit qualifying program, as designated by the director, a prisoner shall be awarded worktime credit reductions from his term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser period of continuous performance.* Less than maximum credit should be awarded pursuant to regulations adopted by the director for prisoners not assigned to a full-time credit qualifying program. Every prisoner who refuses to accept a full-time credit qualifying assignment or who is denied the opportunity to earn worktime credits pursuant to subdivision (a) of Section 2932 shall be awarded no worktime credit reduction. Every prisoner who voluntarily accepts a half-time credit qualifying assignment in lieu of a full-time assignment shall be awarded worktime credit reductions from his term of confinement of three months for each six-month period of continued performance." (Italics added.)

of section 4019 which allows for only a one-third reduction for work performance and good behavior in the county jail pending trial.[4]

It is the application of the stingy formula of section 4019 to Bruce Paul Caruso which triggers his equal protection argument. He says the court violated equal protection principles by calculating his presentence credits under section 4019 rather than 2933 for the time he spent in county jail before his commitment to prison. He contends that in order for him to be treated equally, he should receive the benefit of section 2933 for his precommitment jail time. We decide otherwise. Applying strict scrutiny analysis, we hold there is a compelling reason to support the difference in the respective statutes and since there are no possible alternatives, section 2933 is essential to accomplish that purpose. We therefore affirm the judgment.

I

In pursuing his equal protection argument Caruso asks us to consider a hypothetical defendant who committed the same crime on the same day as he did and who was later convicted and sentenced to four years in prison. If this hypothetical defendant is released either on his own recognizance or on bail before trial, he serves only two years in custody provided he earns full credits under the one-half-off formula of section 2933. Caruso, however, unable to make bail and not having been released on his own recognizance pending trial, will serve something more than two years. The reason is that while Caruso was in presentence local custody, he received proportionately less credit under the one-third-off formula of section 4019.[5]

---

[4]Section 4019 provides in part: "(a) The provisions of this section shall apply in all of the following cases:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(4) When a prisoner is confined in a county jail, . . . following arrest and prior to the imposition of sentence for a felony conviction.

"(b) Subject to the provisions of subdivision (d), for each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, . . .

"(c) For each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, . . .

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(f) It is the intent of the Legislature that *if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody.*" (Italics added.)

[5]Arguably our entire equal protection discussion is unnecessary because Caruso and his hypothetical clone are actually being treated equally. A reasonable interpretation of section 2933, subdivision (a), suggests there are circumstances in which even state prisoners may not receive one for one credits. For example, there is no guarantee that a full-time work program will be available when a prisoner arrives at prison. Quite possibly, the program

A

■ Our initial inquiry is to determine the appropriate level of scrutiny to apply to Caruso's equal protection challenge. (See generally *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798 [187 Cal.Rptr. 398, 654 P.2d 168] and fn. 19.) As a general proposition, statutes which create suspect classifications or which draw distinctions that impinge on fundamental interest are subject to strict scrutiny. (*People* v. *Olivas* (1976) 17 Cal.3d 236, 243 [131 Cal.Rptr. 55, 551 P.2d 375].) Personal liberty is a fundamental interest for equal protection purposes. (*Id.*, at p. 251.) The failure to apply section 2933 has more than a theoretical effect on the defendant who is jailed pending trial compared to his counterpart who remains free on bail or on his own recognizance. As a practical matter, the latter suffers a shorter period of incarceration. In this case, Caruso was committed to a longer overall period of custody solely because he was deprived of the benefits of section 2933 while in the county jail. We believe this additional loss of liberty requires us to apply strict scrutiny to our analysis of section 2933.

In reaching this result, we have respectfully departed from *In re Bender* (1983) 149 Cal.App.3d 380 [196 Cal.Rptr. 801] which applied a rational basis standard of review (*id.*, pp. 387-389) while acknowledging earlier cases applied strict scrutiny to disparate allowances of conduct credits. (*Id.*, at p. 388, discussing *People* v. *Sage* (1980) 26 Cal.3d 498, 507-508 [165 Cal.Rptr. 280, 611 P.2d 874]; *People* v. *Saffell* (1979) 25 Cal.3d 223, 228, 235 [157 Cal.Rptr. 897, 599 P.2d 92]; *People* v. *Hankins* (1982) 137 Cal.App.3d 694, 697-700 [187 Cal.Rptr. 210]; *In re Martin* (1981) 125 Cal.App.3d 896, 898-903 [178 Cal.Rptr. 445]; see also *People* v. *Duran* (1983) 147 Cal.App.3d 1186, 1190-1193 [195 Cal.Rptr. 724]; *People* v. *Reynolds* (1981) 116 Cal.App.3d 141, 144-147 [171 Cal.Rptr. 461].) *Bender's* effort to distinguish those cases as involving a grant or denial of conduct credits upon an initial deprivation of liberty, as opposed to a grant or denial resulting from a retroactive or solely prospective application of a newly enacted punishment-lessening statute, is not persuasive. (149 Cal.App.3d at pp. 388-389.) We believe it matters little whether a defendant is denied presentence conduct credits at the time of sentencing or sometime later. In

---

may be filled and the prisoner unable to participate for a period of time. Accordingly, the prisoner willing to work full time only receives good time/participation credits pursuant to section 2931 which are equivalent to those provided by section 4019, i.e., one-third credits. Thus, this situation anticipated by the Legislature and covered by the statute reflects the legislative intent to treat imprisoned identically situated felons differently regarding the length of incarceration. The felon fortunate enough to participate in a program receives a one for one credit, but his less fortunate clone who is unable to work due to no fault of his own, receives only a one for two credit. As reflected in our opinion, we do not rest our holding on this ground.

either case, the practical effect is clear. The defendant spends more time in custody than he otherwise would have and suffers a correspondingly greater infringement on his personal liberty.

■ Under the strict scrutiny standard of review, "*the state* must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are *necessary* to further that purpose." (*People* v. *Olivas, supra,* 17 Cal.3d at p. 251, original italics.) We address each of these requirements in sequence.

B

■ Under our determinate sentencing law (DSL) "the purpose of imprisonment for crime is punishment." (§ 1170, subd. (a)(1).) The enactment of the DSL "marked a significant change in the penal philosophy of this state regarding adult offenders." (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].) That change in philosophy, however, did not altogether eliminate rehabilitation as a function of incarceration. Instead, it subordinated rehabilitation to punishment as the primary purpose of imprisonment. As described by its drafters, the DSL represented a "switch from a 'rehabilitation' to a 'punishment' model with respect to the *dominant* purpose behind incarceration in state prisons . . . ." (Parnas & Salerno, *The Influence Behind, Substance and Impact of the New Determinate Sentencing Law in California* (1978) 11 U.C. Davis L.Rev. 29, 40, italics added.) Rehabilitation thus remains an important, albeit secondary, purpose of imprisonment.[6] (See *People* v. *Saffell, supra,* 25 Cal.3d at pp. 233-234 (describing rehabilitation as an "appropriate and necessary [goal] in a prison setting" following enactment of the DSL).) Section 2933 is justified by the state's compelling interest in the rehabilitation of prisoners.

The Legislature enacting the DSL recognized the continuing importance of the rehabilitation of prisoners and of their reintegration into society by enacting sections 2930 through 2932. (Added by Stats. 1976, ch. 1139,

---

[6]As the DSL drafters explained: "Whether determinate sentencing will be any more successful than indeterminate sentencing in changing criminal offenders into law abiding citizens is doubtful. In that sense, the new process is just as experimental as the former. However, a crucial difference between the two is that rehabilitation is not a *dominant* goal of the new law. In fact, widespread recognition of the failure and abuses of the rehabilitative ideal was the primary factor in the dismantling of a system grounded in a diagnostic, sickness, causality-capability and curative, predictive change. *Nonetheless, there is speculation that a collateral benefit of a visible, fair and equitable sentencing process of relatively certain and early prison terms may be rehabilitation. It is hypothesized that the apparent factual fairness of such a system will be more effective than a system geared toward rehabilitation but incapable of making the decisions required to accomplish that end."* (*Id.,* at p. 29, italics added.)

§ 276, pp. 5146-5149.) Those sections served rehabilitative purposes by providing conduct credits to prisoners who displayed good behavior (§ 2931, subd. (b)) and who participated in "work, educational, vocational, therapeutic or other prison activities." (§ 2931, subd. (c); see *People* v. *Austin* (1981) 30 Cal.3d 155, 163 [178 Cal.Rptr. 312, 636 P.2d 1]; *People* v. *Saffell, supra,* 25 Cal.3d at p. 233.) More recently, the Legislature reaffirmed its continuing commitment to the rehabilitation of prisoners by enacting section 2933.[7] (Added by Stats. 1982, ch. 1234, § 4, pp. 4551-4552.) This section sharpens the DSL's rehabilitative purpose by eliminating good behavior credits for defendants committing crimes on or after January 1, 1983 (see § 2931, subd. (d)) and substituting in their place only "worktime" credits for participation in qualifying programs. (§ 2933, subd. (a); see generally *In re Bender, supra,* 149 Cal.App.3d at p. 387; *In re Paez* (1983) 148 Cal.App.3d 919, 921-922 [196 Cal.Rptr. 401].) Worktime credits are designed to instill in prisoners "the values of a law-abiding and cooperative society and [to] improve the possibility of their reintegration into that society" (see fn. 7, *ante*) by teaching such things as marketable skills, good work habits and goal orientation. (*Ibid.*) In short, worktime credits are designed to rehabilitate prisoners. (*In re Cleaver* (1984) 158 Cal.App.3d 770, 773 [204 Cal.Rptr. 835]; *In re Bender, supra,* 149 Cal.App.3d at p. 387.) As with the rehabilitation of criminal defendants in other institutional settings (*People* v. *Saffell, supra,* 25 Cal.3d at pp. 229-230; *People* v. *Duran, supra,* 147 Cal.App.3d at p. 1190; *People* v. *Reynolds, supra,* 116 Cal.App.3d at p. 146), the state has a continuing and compelling interest in the rehabilitation of prisoners through their work toward earning conduct credits under section 2933. (See *People* v. *Rosaia* (1984) 157 Cal.App.3d 832, 847 [203 Cal.Rptr. 856]; see also *People* v. *Caddick* (1984) 160 Cal.App.3d 46, 52-53 [206 Cal.Rptr. 454].)

## C

Section 2933 limits the availability of its conduct credits to postsentence imprisonment. Is that limitation necessary to further the state's compelling interest in the rehabilitation of prisoners? (See *People* v. *Saffell,*

---

[7]The Legislature expressed this commitment as follows: "It is the intent of the Legislature that all able-bodied prisoners in the state prisons be directed to work, inasmuch as the performance of productive work on a regular basis is the most appropriate method of successfully instilling in prisoners the values of a law-abiding and cooperative society and will improve the possibility of their reintegration into that society.

"The Legislature declares that the Department of Corrections, as one of the chief goals of the operation of the state prison system, shall seek to achieve self-sufficiency of the prison system through the development of prisoner labor and skills to provide the necessities of the prisons, to teach marketable skills, good work habits, and goal orientation to prisoners, and to reduce the amount by which the prisons must be supported by taxes and thus also benefit the public at large." (Stats. 1982, ch. 1, § 1, p. 1.)

*supra,* 25 Cal.3d at p. 235; *People* v. *Reynolds, supra,* 116 Cal.App.3d at pp. 146-147.) In theoretical terms perhaps not. But since there is no practical alternative, we answer this question affirmatively.

To serve their rehabilitative purpose, section 2933 conduct credits must be earned through active participation in qualifying programs. (See § 2933, subds. (a) and (b).) Therefore, to be made available before sentencing, every city and county jail, industrial farm and road camp throughout the state (see § 4019, subd. (a)(4)) would have to establish and administer a section 2933 conduct credit program. The many obstacles, including but not limited to funding, that would impede the establishment and administration of such programs where none currently exist justify the limitation of section 2933 credits to postsentence imprisonment. (See *People* v. *Saffell, supra,* 25 Cal.3d at pp. 234-235; *People* v. *Lawrence* (1983) 144 Cal.App.3d 290, 294 [192 Cal.Rptr. 165]; see also *In re Cleaver, supra,* 158 Cal.App.3d at p. 774; *People* v. *Davis* (1984) 154 Cal.App.3d 253, 255 [201 Cal.Rptr. 422].) Furthermore, even if section 2933 credits were available before trial and sentencing, many defendants would be unable to work on the full-time basis necessary to earn a one-half reduction of their sentence. (See § 2933, subd. (a).) This inability would result from the many conflicting demands on their time, such as court appearances, appointments with attorneys and investigators, participation in various studies and reports (e.g., §§ 1203, subds. (c) and (d); 1203d; 1203h; 1203.03, subd. (a); Cal. Rules of Court, rule 419(a)(4) and (a)(6))[8] and related travel and preparation time. Maintaining a full-time section 2933 work program in the face of these distractions would be difficult if not impossible for many defendants. Given that reality, it would be merely an empty gesture, as well as an impossible financial and administrative burden, to make section 2933 credits available before sentencing.

Under these circumstances, we hold that the limited availability of section 2933 credits to postsentence imprisonment is constitutionally valid.[9] (Ac-

---

[8]All subsequent rule references are to the California Rules of Court.

[9]*People* v. *Sage, supra,* 26 Cal.3d 498, does not compel a contrary conclusion. *Sage* held equal protection principles required section 4019 presentence conduct credits to be made available to detainee/felons who would otherwise spend a longer time in custody than similarly situated felons who serve no presentence time. (*Sage, supra,* at pp. 507-508.) An important distinction exists, however, between the accrual of conduct credits under sections 4019 and 2933. Under section 4019, credits are awarded automatically for passive good behavior. (See § 4019, subds. (b) and (c); *People* v. *Austin, supra,* 30 Cal.3d at p. 166.) By comparison, there is nothing automatic about the award of section 2933 credits. Absent affirmative and sustained efforts to earn them, such credits will not be awarded. (See § 2933, subds. (a) and (b); compare § 4019, subds. (b) and (c) (credit "shall be deducted" from defendant's sentence "unless it appears by the record" that he or she has not behaved properly).) Because of this basic difference in the manner of accrual, the practical problems which necessitate the limited availability of section 2933 credits to postsentence imprisonment present no obstacle to the presentence availability of section 4019 credits. Thus, con-

cord *People* v. *Rosaia, supra,* 157 Cal.App.3d at p. 848; *People* v. *Caddick, supra,* 160 Cal.App.3d at pp. 50-53.)

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Disposition*

Judgment affirmed.

Work, J., and Butler, J., concurred.

---

sistent with equal protection principles, section 2933 credits may be withheld where section 4019 credits must be extended. (Accord *In re Cleaver, supra,* 158 Cal.App.3d at p. 774; *People* v. *Rosaia, supra,* 157 Cal.App.3d at pp. 844-845.)

*See footnote 1, *ante,* page 13.