[No. C001439. Third Dist. Sept. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIE ANTONIO GARCIA, Defendant and Appellant.

**COUNSEL**

William M. Robinson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael T. Garcia and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PARK, J.\*—** In this appeal, the defendant contends on equal protection grounds that the sentencing court improperly failed to award him 198 days of presentence conduct credit against a state prison sentence which he received after his initial commitment to the Youth Authority was recalled under Welfare and Institutions Code section 1737.[1] He does not seek any conduct credit for time actually spent in the Youth Authority, conceding that *People* v. *Austin* (1981) 30 Cal.3d 155 [178 Cal.Rptr. 312, 636 P.2d 1] forecloses that attack. He also argues that the court erred in failing to grant conduct credit for time spent in state prison and pending resentencing under section 1737. He acknowledges that he received the correct amount of credit for actual time served. Since each of his three arguments raises different issues, we will discuss them separately. We agree with defendant on the first point and will modify his sentence to include the additional 198 days of conduct credit.

### PROCEDURAL BACKGROUND

The defendant pled guilty in August 1981 to one count of forcible rape. (Pen. Code, § 261, subd. (2).) As he was 19 at the time of the offense, the

---

\*Assigned by the Chairperson of the Judicial Council.

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

court ordered a diagnostic evaluation (Pen. Code, § 1203.03) to determine whether to place defendant in state prison or exercise its option under section 1731.5 to commit him to the Youth Authority. Following the recommendation it received, the court committed defendant to the Youth Authority. Finding him unsuitable, however, the Youth Authority rejected him and the court sentenced him to state prison for the upper term of eight years. On appeal, this court previously determined the Youth Authority's rejection was based on a classification policy which had been improperly promulgated and we directed that he be recommitted to the Youth Authority. (*People* v. *Garcia* (Feb. 28, 1984) 3 Crim. 12285 [unpub. opn.].)[2] Upon receipt of our remittitur, and in September 1984, the trial court complied by committing defendant once again to the Youth Authority.

In December 1985, the Youth Authority requested the trial court recall the commitment under section 1737 because defendant had demonstrated his unsuitability for treatment by being convicted in September 1985 of possession of a deadly weapon (Pen. Code, § 12020, subd. (a)) while confined in one of its facilities. After mistakenly withdrawing the request in January 1986, causing the court to drop the matter from its calendar, the Youth Authority renewed the request in March 1986 and in May of that year defendant was sentenced once again to state prison for the upper term of eight years, less credit for time served. It is the amount of conduct credit received at this time which is the sole focus of defendant's appeal.

Between the time of his arrest in May 1981 for the original offense and his first commitment to state prison in June 1982 (following his initial rejection by the Youth Authority), defendant spent a total of 397 days in the county jail and the diagnostic facility, for which he received 198 days of conduct credits. Upon his commitment in September 1984 to the Youth Authority following the issuance of the remittitur in the prior appeal, defendant received credit for the 397 days of actual presentence custody and 826 days actual time served in state prison for a total credit of 1223 days against his Youth Authority commitment. At the time, the trial court noted, "I've read and considered the report furnished by the Probation Department which indicates you have eight hundred and twenty-six [days of] raw time served in the Department of Corrections and three hundred and ninety-seven days raw unsentenced time in the Sacramento County Jail. [¶] And that while in Department of Corrections, total three hundred and seventy-one days which appears to be all of the good time/work time you would have accumulated was taken from you for various incidences [*sic*]." In May 1986, after granting the Youth Authority's renewed petition for recall, the court credited defendant with the above 1223 days for the presentence and prior

---

[2] We grant defendant's request to take judicial notice of the record in the prior appeal.

prison custody, 577 days for actual time (up to April 28, 1986) in the custody of the Youth Authority, plus 16 days for time spent in the county jail awaiting his resentencing to state prison. The only conduct credits awarded by the court were for the 16 days in the county jail, for which defendant received an 8-day credit, giving him total actual and conduct credits of 1,824 days. He did not receive any conduct credits for time awaiting trial following his initial arrest or for time spent at the diagnostic facility.

I

Defendant first contends it is a violation of equal protection to grant presentence conduct credits to felons sentenced directly to state prison and deny them to felons such as himself who are first committed to the Youth Authority and later sentenced to prison under section 1737. He relies on *People* v. *Sage* (1980) 26 Cal.3d 498, 507-508 [165 Cal.Rptr. 280, 611 P.2d 874], in which the court ruled on equal protection grounds that presentence conduct credits must be accorded to felony detainees even though the statutory scheme at that time did not authorize them. The *Sage* court's rationale was that pretrial felony detainees were in the same position as felons who were fortunate enough to make bail or release on their own recognizance and who, upon sentencing to state prison, would therefore receive conduct credit for all of their custodial time. This holding was subsequently codified, effective January 1, 1983, in Penal Code section 4019, subdivision (a)(4). (*People* v. *Caddick* (1984) 160 Cal.App.3d 46, 50 [206 Cal.Rptr. 454].) Defendant here argues his intervening Youth Authority commitment should not forfeit his right to these conduct credits once he is ultimately sentenced to prison. We agree.

At the time of defendant's original sentence to state prison in June 1982 he was entitled to conduct credit only by virtue of *Sage,* since Penal Code section 4019 at that time did not extend conduct credits to felony detainees. By the time of his subsequent commitment to the Youth Authority in 1984, however, the Supreme Court had decided *People* v. *Austin, supra,* 30 Cal.3d 155, holding that a youthful offender committed to the Youth Authority is entitled neither to presentence conduct credit nor to such credit for time served at the Youth Authority, since the person's conduct awaiting trial and serving the sentence is taken into account by the Youthful Offender Parole Board in setting a release date.[3] The trial court therefore properly denied conduct credits at that time.

[3] Before *Austin* the prevailing view granted presentence conduct credit to people committed to the Youth Authority, and we note that the trial court awarded 56 days of conduct credit on the defendant's initial commitment to the Youth Authority. (See Greer, The Felony Sentencing Manual (1986) Presentence Credits, pp. 6-7—6-8.)

Foreshadowing *Austin* by half a year, the court in *People* v. *Reynolds* (1981) 116 Cal.App.3d 141, 147 [171 Cal.Rptr. 461] likewise concluded that conduct credits are not available for time served in Youth Authority commitments. On this basis it held that a defendant initially committed to the Youth Authority but who had become "incorrigible" was not entitled to conduct credit upon his subsequent sentence to state prison under section 1737.1. (*Ibid.*) The court in *People* v. *Acosta* (1985) 170 Cal.App.3d 1033 [216 Cal.Rptr. 841] reached a similar result with a person whose Youth Authority commitment was "recalled" under section 1737 and then sentenced to state prison, as was defendant in this case.[4]

None of these three cases deals with the precise issue we face. *Reynolds* and *Acosta* do not address presentence conduct credits at all. *Austin* disallows them only when the commitment is to the Youth Authority and does not reach the question of whether they should be restored when the initial commitment is withdrawn and the defendant is later sentenced to state prison. Together, these three cases merely recognize that equal protection is not offended by denial of conduct credit for time served before or during commitment to the Youth Authority because the rehabilitative and indeterminate nature of a Youth Authority commitment is fundamentally different from the penal nature of a determinate term in state prison. The purpose of awarding automatic conduct credits whether for time spent pending sentencing or thereafter—to encourage good behavior and participation in programs—would not be served at the Youth Authority because there the youthful offender already has the opportunity to reduce his sentence through good behavior awaiting trial and serving the commitment. (*People* v. *Austin, supra,* 30 Cal.3d at p. 166; *People* v. *Reynolds, supra,* 116 Cal.App.3d at p. 147.) For that reason, these cases simply hold that no conduct credit should be awarded in favor of youthful offenders who are actually committed to the Youth Authority. Under *Sage* and the statute now in effect, however, youthful offenders awaiting sentencing on felony charges do *accrue* conduct credit; whether they actually receive it depends upon the decision whether to send them to the Youth Authority, in which event they do not, or to state prison, in which event they do. In our view, the reward earned for good behavior awaiting sentencing cannot be withdrawn consistently with *Sage* simply because the person later becomes incorrigible or the Youth Authority determines for whatever reason that its initial evaluation was wrong.

At least two cases do deal with the issue of presentence credits for youthful offenders: *People* v. *Twine* (1982) 135 Cal.App.3d 59 [185 Cal.Rptr. 85]

---

[4]We note that under section 1737 a defendant is expressly given credit for "time served" while in the custody of the California Youth Authority, but the statute makes no mention of conduct credit. Section 1737.1 makes no reference to either type of credit.

and *People* v. *Lawrence* (1983) 144 Cal.App.3d 290 [185 Cal.Rptr. 85]. In *Twine* the court held that a person sentenced to state prison is entitled to presentence conduct credits for time spent in juvenile hall (*id.,* at p. 62), thus confirming that *Austin's* prohibition against presentence conduct credits applies only when the decision is made to send the youthful offender to the Youth Authority rather than to state prison. In *Lawrence* the court refused presentence conduct credit for time spent in juvenile hall against a subsequent state prison sentence because the defendant there had been *originally* committed to the Youth Authority. (*Id.,* at p. 296.) Although the decision is closely on point, we decline to follow it. The People in *Lawrence* conceded that the defendant in that case would be entitled to these conduct credits but the court nonetheless denied them, relying on a footnote in *Twine* that simply observed that conduct credit for time in juvenile hall cannot be awarded when the sentence is to the Youth Authority. (See *In re Ricky H.* (1981) 30 Cal.3d 176, 185-190 [178 Cal.Rptr. 324, 636 P.2d 13].) *Twine* said nothing about denying conduct credit under circumstances in which the initial Youth Authority commitment is withdrawn and the offender is sentenced to state prison. ▆▆▆ As stated, in our view the conduct credit which was *earned* during presentence custody and withdrawn only because the commitment was initially to the Youth Authority should be reinstated upon a subsequent state prison commitment.[5]

We conclude that defendant should have received conduct credit for time spent awaiting sentencing and undergoing the evaluation under Penal Code section 1203.03. Since the People have not contended that defendant is in error in claiming 198 days of conduct time, we see no reason to remand for a redetermination of the amount of the credit.

## II

▆▆▆ Defendant next asserts he was erroneously denied conduct credit for his first prison term of 826 days because the court which sentenced him to the Youth Authority in September 1984 (in a finding adopted by the

[5] This part of the opinion in *Lawrence* has been criticized in The Felony Sentencing Manual, *supra,* at page 6-8, as follows: "*Austin* and *Ricky H.* do not, however, preclude an award of conduct credit where a defendant ultimately sentenced to state prison was committed to a juvenile facility prior to sentencing. . . . Curiously, even though the People conceded that the defendant was entitled to presentence conduct credit for time spent in juvenile hall prior to his commitment to CYA and ultimate sentence to state prison, a contrary result was reached in *People* v. *Lawrence* [*supra*] 144 Cal.App.3d 290, . . . Misplaced reliance on *Ricky H.* led the court to conclude that 'because appellant was *originally* sentenced to the Youth Authority, he is not entitled to conduct credit for his presentence detention in juvenile hall' against his state prison commitment. (144 Cal.App.3d at p. 296 . . . ; emphasis added.) This is precisely the situation addressed in *Sage,* however, and earned conduct credits should have been awarded for the period of predisposition confinement."

court resentencing him to prison in May 1986) stated that only 371 days had been forfeited for bad behavior, meaning that he was still entitled to 42 days of conduct credit from a potential of one-half of 826 days, or 413 days. The court's statement is ambiguous, since it declares "all" conduct credits were forfeited but mentions an incorrect number of days.

Faced with this ambiguity in the record, however, defendant must lose. ■ We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276.) ■ Combined, these elementary principles require us to assume the trial court meant *all* conduct credits were forfeited and merely misspoke as to the number of days; it is, after all, difficult to believe a trial court which had just recited the number of actual days served in prison could in the next breath be unaware that 371 is not half of 826.

Furthermore, if the probation report upon which the court indicated it was relying was in error and showed only 371 days, defendant should have challenged it below or made it part of the record on appeal to demonstrate affirmatively that he was entitled to the additional 42 days.

### III

■ Following his conviction for possession of a deadly weapon, defendant was transferred in September 1985 to the Correctional Medical Facility at Vacaville. He argues as of that point he was no longer in the custody of the Youth Authority and was entitled to conduct credits based on *Acosta, supra,* 170 Cal.App.3d at pages 1036-1037. He is wrong.

Obviously, until the trial court granted the petition of the Youth Authority to recall defendant's commitment (§ 1737) he remained in the custody of the Youth Authority. That he was housed in the Correctional Medical Facility, an institution under the jurisdiction of the Department of Corrections (Pen. Code, §§ 6100, 6102) is irrelevant; the Youth Authority may provide for the performance of any of its duties or the exercise of any of its powers by the Department of Corrections. (Pen. Code, §§ 6003, 6004.) *Acosta* is of no support, as the People in that case apparently did not contest at the trial level the award of conduct credits for a period of custody in which the defendant was committed to the Youth Authority but was housed at the California Training Facility at Soledad, an institution within the jurisdiction of the Department of Corrections (Pen. Code, § 2045 et seq.); as a result, the court found any challenge waived on appeal. (*People* v.

*Acosta, supra,* 170 Cal.App.3d at p. 1037.) A case is not authority for propositions not considered. (*People* v. *Burnick* (1975) 14 Cal.3d 306, 317 [121 Cal.Rptr. 488, 535 P.2d 352].)

Alternatively, defendant claims he was no longer in the custody of the Youth Authority as of the initial letter requesting the court to recall the commitment in December 1985. As a result, he asserts, he was entitled to conduct credits beginning with that date. The Youth Authority cannot unilaterally effect a recall of the commitment, however, for otherwise there would be no purpose to section 1737. As defendant remained in the Youth Authority's custody until its petition was granted by the trial court, he did not earn conduct credits. This principle also disposes of defendant's argument that his conduct credits should be deemed to run from the date the Youth Authority erroneously withdrew its initial request for recall of the commitment, thus extending the date of his sentence to state prison from January 31 to May 14, 1986. Until the court decided to withdraw the commitment he remained in the custody of the Youth Authority and was not entitled to conduct credit.

### Disposition

Defendant is entitled to an additional 198 days of presentence conduct credit, and his sentence is hereby modified accordingly. The trial court is directed to amend the abstract of judgment to conform to this opinion and to forward a certified copy thereof to the Department of Corrections. Otherwise the judgment is affirmed.

Carr, Acting P. J., and Sims, J., concurred.