[No. F009463. Fifth Dist. Aug. 1, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
WASHINGTON OTIS LINEAR III, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of part II.

**COUNSEL**

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, P. J.—

### STATEMENT OF THE CASE AND FACTS

This is the second appeal arising out of a judgment of conviction of forcible rape, forcible oral copulation, burglary and robbery. Appellant was 17 years old at the time these crimes were committed.

Appellant was originally sentenced to state prison for a total term of 12 years following a Youth Authority (YA) determination under Welfare and Institutions Code section 707.2 that he was not amenable to treatment. However, in an unpublished opinion, this court remanded the case for resentencing after the preparation of a new amenability report by the YA.

Upon resentencing, appellant was committed to the YA for 12 years pursuant to Welfare and Institutions Code section 1731.5. The trial court ordered that appellant's term be reduced by 295 days for the period spent in county jail before the original sentencing plus 147 days' conduct credits related to that period. Appellant was also credited with 1,022 days for the time spent in the custody of the Department of Corrections.

### DISCUSSION

I *Appellant is not entitled to conduct credits against his maximum YA confinement time for the time he was in the custody of the Department of Corrections.*

■ A defendant sentenced to the YA pursuant to Welfare and Institutions Code section 1731.5 may not be held in YA confinement for a period exceeding the maximum term for which he would have received prison confinement. (*People* v. *Olivas* (1976) 17 Cal.3d 236, 257 [140 Cal.Rptr. 734].) ■ Such a defendant receives credits against his maximum confinement time for actual time spent in presentence custody. (Cal. Code Regs., tit. 15, § 4945, subd. (e).) However, unlike a state prison inmate, the defendant is not entitled to have his maximum term reduced by either

presentence conduct credits accrued while in local custody (*People* v. *Sage* (1980) 26 Cal.3d 498, 506) or postsentence conduct credits computed under Penal Code sections 2930 through 2932. (*People* v. *Austin* (1981) 30 Cal.3d 155, 161 [178 Cal.Rptr. 312, 636 P.2d 1].) ▇ This denial of conduct credits does not offend equal protection because the rehabilitative and indeterminate nature of a YA commitment is fundamentally different from the penal nature of a determinate term in state prison. (*People* v. *Garcia* (1987) 195 Cal.App.3d 191, 196 [240 Cal.Rptr. 703].) The Legislature has declared that the purpose of the Youth Authority Act "is to protect society from the consequences of criminal activity and to such purpose training and treatment shall be substituted for retributive punishment and shall be directed toward the correction and rehabilitation of young persons who have committed public offenses." (Welf. & Inst. Code, § 1700.) However, "the purpose of imprisonment for crime is punishment." (Pen. Code, § 1170, subd. (a)(1).)

This contrast between a YA commitment and imprisonment is evident with respect to the evaluation of in-custody behavior. For those committed to state prison, the application of conduct credits is governed by rigid rules designed to encourage conformity to prison regulations, to provide incentives to refrain from criminal conduct, and to encourage participation in "rehabilitative" activities. (*People* v. *Austin, supra,* 30 Cal.3d 155, 163-164.) However, youthful offenders who are sentenced to YA are entitled to consideration of their in-custody behavior under a different set of guidelines which are consistent with both the indeterminate aspects of YA commitments and the declared legislative intent. (*Id.* at p. 164.) "In-custody behavior of YA committees is considered as being relevant to the YA rehabilitative and corrective goals, rather than as a mere aid to maintaining order in the facility." (*Ibid.*) Since rehabilitation is the standard in YA commitments and, under the behavioral guidelines enumerated in the California Code of Regulations and the Youth Authority Act, YA committees may be released earlier or later than their imprisoned counterparts, it follows that imposition of the Penal Code provisions for conduct credits upon YA commitments would " 'provide the youthful felon with what he already has: the opportunity to reduce his time in confinement because of his conduct.' " (*Ibid.*)

Appellant contends he is entitled to apply the conduct credits he earned while in state prison before his second referral to the YA against his maximum confinement time and that equal protection compels this result.[1]

---

[1] Appellant acknowledges that, even if these conduct credits are applied, he will reach his 25th birthday and consequently be released before the expiration of his maximum confinement time. (Welf. & Inst. Code, § 1771.) Appellant states he is presenting this appeal due to

Appellant argues that since he was being punished in state prison and was encouraged by the apparent guaranty of conduct credits to obey regulations, to refrain from crime, and to participate in "rehabilitative" programs, it will not serve the goal of rehabilitation to renege on this apparent guaranty.

As noted above, *People* v. *Austin, supra,* precludes the reduction of a YA commitment by application of presentence conduct credits accrued while in local custody. *Austin* recognizes that the application of such conduct credits could undermine the goals of correction and rehabilitation of youthful offenders by impairing the flexibility needed in determining the length of the YA confinement. (30 Cal.3d at pp. 165-166.)

Applying this reasoning here, appellant is not entitled to reduce his maximum confinement time by the conduct credits earned in state prison. The location where the conduct credits accrue, i.e., state prison as opposed to a local jail, has no effect on the analysis. Although the purpose of appellant's incarceration in state prison was punishment, it changed to rehabilitation upon his being committed to the YA. The application of the conduct credits to reduce the maximum confinement time would not further this rehabilitative goal. Further, his determinate sentence became an indeterminate sentence. Since conduct credits have meaning only within the context of a fixed term (*People* v. *Austin, supra,* 30 Cal.3d at p. 165), they have no relevance here.

Additionally, appellant's equal protection analysis is lacking a crucial element. He has not demonstrated a disparity between how he and other committees at the YA are being treated. Appellant compares himself with others who were in state prison at the same time he was in an attempt to show disparate treatment. However, appellant is no longer in that class of state prison inmates. He is now in the class of YA committees who are not entitled to the conduct credits which would otherwise accrue if they were imprisoned. Thus, rather than correcting an impermissible disparity, reducing appellant's maximum confinement time would place him in a favored class of committees who spend a portion of their precommitment time in state prison.

Although the credits earned by appellant for work and good conduct while in state prison will not reduce his maximum confinement time at YA, they have already had an effect on his placement. Appellant's participation in the prison program was a major factor in the YA's determination that he was amenable to treatment following the second Welfare and Institutions

---

the possibility of an extended commitment under Welfare and Institutions Code sections 1780 et seq. and 1800 et seq.

Code section 707.2 evaluation. Additionally, these conduct credits can have an impact on appellant's parole consideration date. Consideration will be given to the effect that the "ward's experiences and behavior while in local custody have on the ward's training and treatment needs" in setting the parole consideration date. (Cal. Code Regs., tit. 15, § 4945, subd. (d); *People v. Austin, supra,* 30 Cal.3d at p. 166.) Further, the guidelines for deviating from the prescribed parole consideration date, here three years, include the committee's "[b]ehavior or adjustment while in custody prior to acceptance of commitment." (Cal. Code Regs., tit. 15, §§ 4945, subd. (i)(5) and 4953.) Finally, should the YA return appellant to the committing court for resentencing pursuant to Welfare and Institutions Code section 1737.1, these previously earned conduct credits would be reinstated to reduce any prison term imposed for this conviction. (See *People v. Garcia, supra,* 195 Cal.App.3d 191, 196.)

II   *Modification of Judgment.* *

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

We affirm the trial court's denial of conduct credits for the period appellant was in custody of the Department of Corrections. The judgment, however, is modified to delete the 147 days of conduct credits awarded.

Martin, J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 1988.

---

* See footnote, *ante,* page 508.