[No. H005551. Sixth Dist. July 25, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST SANDOVAL NAJERA, Defendant and Appellant.

**COUNSEL**

Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Enid A. Camps, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—In 1981 Ernest Sandoval Najera pleaded guilty to second degree murder (Pen. Code, § 187) and was committed to the California Youth Authority for a term of 17 years to life. Approximately eight years later the trial court recalled his commitment pursuant to the provisions of Welfare and Institutions Code section 1737 (hereafter section 1737) and resentenced him to a term of fifteen years to life in state prison, with credit for time served.

On appeal Najera contends that the trial court lacked jurisdiction to resentence him because:

1) The recommendation to recall his commitment was not made by the director of the Youth Authority after a diagnostic study, as section 1737 requires;

2) Since Najera had appeared before the Youthful Offender parole board, only the parole board had the authority to order him returned to the committing court under Welfare and Institutions Code section 1737.1 (hereafter section 1737.1); and

3) Upon recalling a commitment to the Youth Authority for purposes of resentencing, the sentencing court may not impose a sentence harsher than the initial sentence.

We reject these contentions and affirm the judgment and sentence.

## BACKGROUND

The offense for which this sentence was imposed occurred on October 2, 1980, when Najera was 16 years old. On that day an argument arose between Najera and another man in a San Jose public park. Threats were exchanged, Najera brandished a gun and the other man challenged him. Najera shot him four times and the other man later died of his wounds.

On April 14, 1981, Najera pleaded guilty to second degree murder (Pen. Code, § 187) and admitted the personal use of a firearm within the meaning of Penal Code section 12022.5. On May 11, 1981, the court imposed a sentence of 15 years to life for the Penal Code section 187 violation plus a consecutive 2-year enhancement for the use of the firearm and ordered Najera committed to the California Youth Authority.

On March 12, 1985, Najera was released on parole. Later that year he was arrested for possession of a firearm, possession of hypodermic needles, possession of a prescription drug without a prescription and petty theft. After serving a six-month sentence in county jail, Najera was recommitted to the Youth Authority on April 10, 1986.

Najera was again paroled from the Youth Authority on January 30, 1987. While still on parole he was arrested for possession for sale of PCP (Health and Saf. Code, § 11378.5). He pleaded guilty and on February 8, 1988, he was sentenced to three years in state prison.

On April 5, 1988, the Youth Authority recommended to the court that it recall Najera's previously ordered May 11, 1981, commitment and resentence him in accordance with section 1737. The recommendation was made on the basis that the Youth Authority did not believe Najera could materially benefit from further Youth Authority programming.

A new probation report was prepared and on January 9, 1989, the court held a sentencing hearing at which Najera and two additional witnesses

testified. The court recalled Najera's Youth Authority commitment, sentenced him to 15 years to life in state prison on the second degree murder conviction, stayed the 2-year firearm enhancement and ordered all other incomplete sentences to be served concurrently with the 15-year sentence. He was given credit for time served both prior to and subsequent to the initial sentencing. Judgment was entered accordingly and Najera appeals from that judgment.

## DISCUSSION

Youth Authority commitments are governed in general by section 1730 et seq. of the Welfare and Institutions Code. The two sections relevant to recall and resentencing are sections 1737 and 1737.1, which we reprint in full below.[1]

The recall and resentence in this case were accomplished pursuant to section 1737 only.

### I.

█ The recommendation to recall appellant's commitment was in the form of a letter to the committing judge under the letterhead of the Depart-

---

[1] Section 1737 reads as follows: "When a person has been committed to the custody of the authority, if it is deemed warranted by a diagnostic study and recommendation approved by the director, the judge who ordered the commitment or, if the judge is not available, the presiding or sole judge of the court, within 120 days of the date of commitment on his or her own motion, or the court, at any time thereafter upon recommendation of the director, may recall the commitment previously ordered and resentence the person as if he or she had not previously been sentenced. The time served while in custody of the authority shall be credited toward the term of any person resentenced pursuant to this section. [¶] As used in this section, 'time served while in custody of the authority' means the period of time during which the person was physically confined in a state institution by order of the Youth Authority or the Youthful Offender Parole Board."

Section 1737.1 reads as follows: "Whenever any person who has been convicted of a public offense in adult court and committed to and accepted by the Youth Authority appears to the Youthful Offender Parole Board, either at the time of his or her first appearance before the board or thereafter, to be an improper person to be retained by the Youth Authority, or to be so incorrigible or so incapable of reformation under the discipline of the Youth Authority as to render his or her detention detrimental to the interests of the Youth Authority and the other persons committed thereto, the board may order the return of such a person to the committing court. The court may then commit the person to a state prison or sentence him or her to a county jail as provided by law for punishment of the offense of which he or she was convicted. The maximum term of imprisonment for a person committed to a state prison under this section shall be a period equal to the maximum term prescribed by law for the offense of which he or she was convicted less the period during which he or she was under the control of the Youth Authority. This section shall not apply to commitments from juvenile court. [¶] As used in this section 'period during which he or she was under the control of the Youth Authority' means the period of time during which he or she was physically confined in a state institution by order of the Youth Authority or Youthful Offender Parole Board."

ment of Youth Authority of the State of California. It was signed by Jerry Melnick, administrator of the intake and court services section of the department. Appellant contends that such a recommendation was without effect because it was not expressly authorized by the director himself and did not include a separate "diagnostic study." We disagree and find that the recommendation in this case substantially complied with the requirements of section 1737.

We have taken judicial notice, as requested by appellant, of court documents in the cases of *People* v. *Acosta* (1985) 170 Cal.App.3d 1033 [216 Cal.Rptr. 841] and *People* v. *Garcia* (1987) 195 Cal.App.3d 191 [240 Cal.Rptr. 703]. In those cases, as in ours, letters from the Youth Authority recommending recall were signed by the administrator of the intake and court services section. But unlike our case, the typed subscriptions on the letters in *Acosta* and *Garcia* indicated specifically that the administrator was signing for the director.

We do not believe that the lack of specific reference to the director affects the validity of the Youth Authority recommendation. The Welfare and Institutions Code, section 1712, provides that the director of the Youth Authority "may delegate the powers and duties vested in him or her by law, in accordance with Section 7." Section 7 says that "Whenever, by the provisions of this code, a power is granted to a public officer or a duty imposed upon such an officer, the power may be exercised or the duty performed by a deputy of the officer or by a person authorized pursuant to law by the officer, unless it is expressly otherwise provided." All indications are that the administrator of the intake and court services section of the Youth Authority was a person authorized to perform duties and exercise powers on behalf of the director of the Youth Authority, and that he was acting within that authority in sending the letter of recommendation here. The fact that the letter did not specifically refer to that authority we do not deem to be a material defect sufficient to render the recommendation invalid.

Furthermore, it appears that appellant acknowledged Melnick's authority to make the recommendation on behalf of the Department of Youth Authority and its director. At the hearing on the resentencing, counsel for Najera questioned Melnick, asking him, among other things, "Is the California Youth Authority recommending to the court that . . . Mr. Najera be resentenced?" and "What position has the California Youth Authority taken on the matter?" Under the circumstances, appellant's assertion that "no indication exists that [Jerry] Melnick had authority to speak for the Director" is wholly without merit.

In regard to the diagnostic study appellant claims was lacking here, he points out that the letters recommending recall and resentencing in the *Garcia* and *Acosta* cases both attached a case report. Melnick's letter apparently did not. As we interpret section 1737, however, there is no requirement that the recall recommendation itself be accompanied by a diagnostic study but only that the judge's decision to recall and resentence defendant is warranted by such a study. It was here.

A new probation report, which included a complete case study, was prepared prior to the resentencing hearing. Najera's parole officer testified at the hearing, as did Melnick. Melnick stated that a report had in fact been prepared prior to the recommendation contained in his letter. His letter referred to Najera's history with the Youth Authority, noting that he had "experienced three parole periods and placements in two institutions and a camp during his two commitments to the Youth Authority" and that he had "demonstrated poor judgement [*sic*] under parole supervision and resumed use of drugs inspite [*sic*] of direct programming to overcome that propensity." The letter also set forth the criteria contained in regulations governing the Youth Authority, which provide the standard for determining whether a person will materially benefit from further retention by the Youth Authority. (Cal. Code Regs., tit. 15, § 4168.) Based upon those stated criteria, Najera's history and the length of time remaining on his commitment, the letter concluded that Najera would not materially benefit from further Youth Authority programming, and it therefore recommended that he be recalled for resentencing. We find that this recommendation complies in all material respects with section 1737 and that the court's recall and resentencing of Najera was fully supported by the record.

## II.

Appellant next contends that the provisions of section 1737.1 override those of section 1737. In other words, he takes the position that once a person has appeared before the Youthful Offender Parole Board, section 1737 no longer applies and recall may be initiated only upon the recommendation of the board under section 1737.1. Such an interpretation is not borne out either by the language of the statutes or by their legislative history.

While both section 1737 and section 1737.1 speak to the recall and resentencing of a person committed to the Youth Authority, each describes a slightly different process. Section 1737 vests authority in the committing judge to recall the commitment and resentence the defendant upon the

recommendation of the director of the Youth Authority. The director may recommend recall if at any time after the commitment it appears that a person under Youth Authority control "will no longer materially benefit by Youth Authority commitment." (Cal. Code Regs., tit. 15, § 4188.5.) Material benefit in turn is based upon a determination whether "there is a reasonable possibility that [the ward's] likelihood to commit delinquent behavior can be significantly reduced or eliminated within the confinement time and jurisdiction time available." (*Id.*, § 4171, subd. (b)(1).)

Section 1737.1, on the other hand, provides a means for the Youthful Offender Parole Board to *order* the recall of a ward it considers to be incorrigible or incapable of reform. While some of the criteria which may be used by the board to determine whether a ward is "incapable of reform" are the same as those used by the director to determine whether the ward will "materially benefit" from further commitment, other factors come into consideration by the board. The board focuses on the ward's behavior during his commitment, and whether that behavior is detrimental to the interests of the Youth Authority and other persons committed there. It considers, for example, whether the ward has physically attacked other youths or staff, inflicted property damage, forced others to commit crimes, possessed unlawful weapons, or persisted in violating institutional rules. (Cal. Code Regs., tit. 15, § 4179.5.)

It is apparent from a plain reading of these two statutes that two separate procedures are contemplated. In the first, the court may recall a commitment and resentence a person based upon the Youth Authority's recommendation that he will no longer materially benefit from the commitment. In the second, the parole board may order a recall and resentencing if it determines the person's behavior is detrimental to the interests of the Youth Authority. We perceive no reason to conclude, as appellant has, that the procedure described in section 1737.1 supersedes that provided by section 1737.

Nor is there any suggestion in the language of either statute that once a ward has appeared before the parole board, the director is thereafter divested of authority to recommend recall under section 1737. In fact, section 1737 clearly contemplates the involvement of the parole board. It provides that upon resentencing, a person committed to the Youth Authority shall receive credit for time served whether the physical confinement was "by order of the Youth Authority or the Youthful Offender Parole Board." (§ 1737.) If appellant's interpretation were to be accepted, this language would be surplusage. (See, e.g., *People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].)

Appellant contends that legislation passed in 1979 which established the Youthful Offender Parole Board as a separate entity, and authorized it to order the return of an incorrigible to the committing court under section 1737.1, was intended to eliminate the power of the director of the Youth Authority to recommend a recall under section 1737. Certainly the language of section 1737.1 does not provide for such a result, nor does anything in the legislative history compel that conclusion. The 1979 legislation left section 1737 intact. And in 1983, the Legislature again examined section 1737, amended it in certain minor respects and left it unchanged in substance. We are entitled to conclude from this that the Legislature did not see a conflict with section 1737.1 and intended section 1737 to have continued effect. (*In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1216 [230 Cal.Rptr. 332].)

### III.

Lastly, appellant contends that even if section 1737 was the correct statute here, the resentencing court exceeded its jurisdiction by imposing a sentence harsher than the one originally imposed. He bases this contention upon an examination of the legislative history of section 1737. Our review of the same legislative history leads us to a different conclusion.

In 1975 the Legislature passed Senate Bill No. 260 amending section 1737 to provide the adult court with the power to recall and resentence a person it had previously committed to the Youth Authority. The purpose of the enactment was to bring section 1737 into conformity with parallel provisions in the Penal Code and Welfare and Institutions Code. At the time, sections 775 and 779 of the Welfare and Institutions Code authorized a juvenile court to recall a commitment to the Youth Authority and Penal Code section 1168 likewise authorized a sentencing court to recall a commitment to state prison for purposes of resentencing. But in the instance where an adult court had imposed a sentence of commitment to the Youth Authority, the court was not similarly empowered to recall the commitment and reimpose sentence. Senate Bill No. 260 corrected that inconsistency.

Appellant argues that since the 1975 amendment was intended to bring section 1737 in line with analogous adult criminal law, it must be read to conform to the provisions of Penal Code section 1170, subdivision (d). That section presently provides that when a defendant has been sentenced to state prison "the court may, within 120 days of the date of commitment on

its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, *provided the new sentence, if any, is no greater than the initial sentence.*" (Italics added.) But the flaw in appellant's reasoning is that Penal Code section 1170, including the italicized language, was added to the Penal Code as part of the new determinate sentencing law the year after section 1737 was amended in 1975. It is thus illogical, if not impossible, to suppose that the Legislature intended section 1737 to conform to the prohibition expressed in section 1170. Penal Code section 1168, the predecessor of Penal Code section 1170, contained no such prohibition, nor do the parallel provisions regarding commitments from juvenile court. (Welf. & Inst. Code, §§ 775 and 779.)

Section 1737 expressly provides that the court recalling a Youth Authority commitment may "resentence the person as if he or she had not previously been sentenced." As we observed in the previous section, the Legislature had the opportunity to reexamine section 1737 when it enacted an amendment of that section in 1983. If it had intended that the language of section 1737 conform precisely to that of Penal Code 1170, subdivision (d), it could easily have accomplished that result at that time. We therefore conclude that section 1737 is not limited by Penal Code section 1170, subdivision (d), and contains no implied requirement that the court recalling a commitment may impose only a lesser sentence than that originally imposed.

Moreover, there is good reason for the difference between Penal Code section 1170, subdivision (d) and Welfare and Institutions Code section 1737. The Penal Code section governs the case where both the original sentence and the resentence are for prison terms. However, where a defendant has originally been sentenced to a rehabilitative facility such as the Youth Authority, requiring more lenient treatment upon resentence is not necessarily warranted, and is in fact antithetical to a Youth Authority determination that the ward will no longer materially benefit from the Youth Authority commitment. It is therefore not surprising that courts have recognized the propriety of sentencing a defendant to a prison term following the recall of his Youth Authority commitment under section 1737. (*People* v. *Garcia, supra*, 195 Cal.App.3d 191; *People* v. *Acosta, supra*, 170 Cal.App.3d 1033.) Finally, we note that in this case the court in resentencing Najera actually imposed a sentence two years shorter than the term of his original sentence.

## DISPOSITION

The judgment is affirmed.

Agliano, P. J., and Cottle, J., concurred.

A petition for a rehearing was denied August 9, 1990, and appellant's petition for review by the Supreme Court was denied October 24, 1990.