Filed 12/26/24  P. v. Masuda CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100589 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 22FE015703, 23FE012935) |
| v. | |
| ALLIE HIROSHI MASUDA, | |
| Defendant and Appellant. | |

Defendant Allie Hiroshi Masuda pled no contest to felony evasion in one case (case No. 22FE015703) and false imprisonment in another (case No. 23FE012935).  The trial court sentenced defendant to 16 months in state prison in the first case and 32 months in the second.  Defendant appeals, arguing the trial court erred in denying his petitions for mental health diversion.  We will affirm.

1

# I. BACKGROUND

### A. Case No. 22FE015703

A Sacramento County Sheriff's deputy in a marked patrol vehicle tried to initiate a traffic stop of a car driven by defendant in September 2022. Defendant sped away, running several stop signs and narrowly avoiding a collision with two other vehicles on the road. He was observed driving at speeds of over 75 miles per hour in a 40-mile-per-hour zone, and 80 miles per hour in a 45-mile-per-hour zone. He was also observed weaving in and out of traffic at approximately 100 miles per hour on Del Norte Boulevard and Fruitridge Road. Defendant eventually collided with a raised curb and pulled into a gas station, where he was taken into custody. He admitted he was aware law enforcement was pursuing him but chose to flee because he was on post-release community supervision with search terms and had marijuana on his person.

Defendant was charged by information with one count of felony evasion (Veh. Code, § 2800.2, subd. (a)—count one). The information further alleged that defendant had a prior strike conviction for robbery. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)[1] Defendant pled not guilty and denied the prior strike allegation.

### B. Case No. 23FE012935

Less than a year later, in August 2023, defendant forced his wife to remain in a motel room with him for two days. He chased her around the room, grabbed her by the neck, and punched her on the side of the head. He dragged her back into the room when she attempted to leave. He pinned her to a wall, strangled her, and shook her around. The ordeal ended when defendant left the motel room and his wife managed to escape.

Defendant was charged by information with infliction of corporal injury on a spouse (§273.5, subd. (a)—count one), assault likely to cause great bodily injury (§ 245,

---

[1] Undesignated statutory references are to the Penal Code.

subd. (a)(4)—count two), criminal threats (§ 422—count three), and misdemeanor use of force on a spouse (§ 243, subd. (e)(1)—count four). The information further alleged that defendant had a prior strike conviction for robbery. (§§ 667, subds. (b)-(i), 1170.12.) As before, defendant pled not guilty and denied the prior strike allegation.

## C. Petitions for Mental Health Diversion

Defendant petitioned for mental health diversion in both cases. (§ 1001.36.) The petitions asserted defendant had been diagnosed with an adjustment disorder and would respond to mental health treatment.[2] They also asserted defendant consented to mental health diversion, agreed to comply with a mental health wellness plan as a condition of diversion, and did not pose an unreasonable threat to public safety.

The prosecution opposed the petitions, emphasizing the dangerousness of defendant's conduct towards his wife in case No. 23FE012935. The prosecution also noted that defendant was alleged to have violated the terms and conditions of court-imposed supervision in both cases. "Taken together," the prosecution asserted, "[d]efendant's potentially fatal criminal conduct in the pending domestic violence case, plus his history of willfully disobeying [c]ourt orders concerning his conduct, clearly demonstrate the unreasonable risk to public safety which [d]efendant would pose if mental health diversion is granted in his cases."

## D. Hearing on Petitions

The trial court conducted a hearing on the petitions in January 2024. Defense counsel reported that defendant was enrolled in outpatient mental health services with El Hogar Mental Health and Community Service Center and planned to complete a

---

[2] The Diagnostic and Statistical Manual of Mental Disorders defines adjustment disorder as "[t]he development of emotional or behavioral symptoms in response to an identifiable stressor(s) . . . that is out of proportion to the severity or intensity of the stressor." (American Psychiatric Assn., Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) p. 286.)

substance abuse program. Defense counsel also reported that his wife supported the petitions.

The prosecutor responded that defendant engaged in dangerous behavior towards his wife in case No. 23FE012935, and the community at large in case No. 22FE015703. The prosecutor also noted: "And the fact that [defendant] is also doing these actions in defiance of court orders, albeit from probation conditions, parole conditions, PCRS conditions that instruct him to conform his behavior to the confines of law, to not engage in these violent acts, it just gives me pause and, to me, makes it more unreasonable because [defendant] demonstrated an inability and unwillingness to follow court orders."

Defense counsel countered that mental health diversion differs from probation, parole, or post-release community supervision, and serves different goals. (See generally *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888 [discussing purpose of § 1001.35].) The trial court asked, "What about the issue of the consent to go through the program?" Defense counsel responded, "[T]hose programs don't work, particularly with people with mental health issues, and that's why [section] 1001.36 was put into place." The trial court asked again, "I can't look at that as his willingness to consent, that he violated this repeatedly?" Defense counsel reiterated that mental health diversion differs from probation, parole, and post-release community service.

The trial court delivered its ruling from the bench. The trial court began by reviewing the facts of case No. 22FE015703, noting: "It is fortunate that no one was seriously injured or killed, but the danger that [defendant] provided to the community was egregious." "Additionally," the trial court continued, "after being stopped, it was confirmed that [defendant] was on searchable probation, clearly in violation of a term of probation which is to obey all laws."

The trial court then discussed case No. 23FE012935. The trial court noted that defendant twice grabbed his wife by the neck or throat. On the second occasion, the trial

4

court said, defendant squeezed her throat for approximately one minute, such that she "was barely able to breathe and believed she was going to die."

The trial court also noted that defendant's criminal history included convictions for possession of an assault weapon (§ 30605, subd. (a)), possession for sale of a controlled substance (Health & Saf. Code, § 11378) and robbery (§ 211), as well as a juvenile adjudication for first degree burglary (§§ 459-460). "Based on the information presented," the trial court said, "I find that [defendant] presents an unreasonable risk of committing a super strike based on the totality of the information before me. [¶] And while it is true that mental health diversion is targeted [to] rehabilitative efforts, [defendant] has clearly and consistently violated his conditions of supervision and gives me pause to believe that [defendant] is genuine in his consent to enroll in and complete mental health diversion." The trial court concluded: "I do find under the dangerousness prong that [defendant] is not eligible, and therefore the request for mental health diversion is denied."

### E.     *Pleas*

Defendant entered no contest pleas in both cases. He admitted one count of felony evasion (Veh. Code, § 2800.2, subd. (a)—count one) in case No. 22FE015703, and one count of false imprisonment (§ 236) as a lesser offense to count one (infliction of corporal injury on a spouse) in case No. 23FE012935. He admitted the prior strike in both cases. The trial court sentenced defendant to 16 months in state prison in case No. 22FE015703 and 32 months in case No. 23FE012935. This appeal timely followed.

## II.  DISCUSSION

### A.     *Applicable Legal Principles and Standard of Review*

Section 1001.36 "authorizes pretrial mental health diversion for defendants with qualifying mental health disorders." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147 (*Whitmill*).) The purposes of mental health diversion are to "mitigate the individuals' entry and reentry into the criminal justice system while protecting public

5

safety," allow "local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders," and "meet[] the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a)-(c).)

Section 1001.36 prescribes a two-step analysis. (§ 1001.36, subds. (b) and (c).) First, the trial court considers whether the defendant is eligible for mental health diversion. (§ 1001.36, subd. (b).) The trial court must find eligibility if (1) the defendant has been diagnosed with a qualifying mental disorder, and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense. (*Ibid.*) We need not discuss the first step in any detail as the parties appear to agree defendant is eligible for mental health diversion.

We can proceed directly to the second step of the section 1001.36 inquiry: suitability for diversion. (§ 1001.36, subd. (c).) A defendant is suitable for diversion if, among other things, the defendant "consents to diversion" and "will not pose an unreasonable danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(2) and (4).) The trial court raised questions about defendant's consent to diversion, but ultimately found defendant was not suitable for diversion because he posed an unreasonable risk of danger to public safety. Our analysis will focus on dangerousness as well.

Under section 1170.18, an unreasonable danger to public safety is an unreasonable risk that the petitioner will commit a "super strike," which includes any homicide or attempted homicide offense, any serious or violent felony punishable by life imprisonment or death, and sexually violent offenses. (§§ 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv).) A trial court may not deny diversion to an otherwise eligible defendant unless it finds the defendant is likely to commit one of these offenses. (*People v. Moine* (2021) 62 Cal.App.5th 440, 450 (*Moine*).) In making this determination, the trial court "may consider the opinions of the district attorney, the defense, or a qualified mental

6

health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

We review a trial court's ruling on a petition for pretrial mental health diversion for abuse of discretion. (*Whitmill, supra,* 86 Cal.App.5th at p. 1147; *Moine, supra,* 62 Cal.App.5th at pp. 448-449.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine, supra,* at p. 449.) It is the defendant's burden to establish abuse of discretion. (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

Defendant argues the trial court abused its discretion in two ways. First, he argues the trial court erred in considering his past performance on post-release community supervision, probation, and parole. Second, he argues substantial evidence does not support the trial court's determination that he poses an unreasonable danger to public safety. We address each argument in turn.

B.      *The Trial Court Did Not Abuse Its Discretion by Considering Defendant's Past Performance on Post-Release Community Supervision, Probation, and Parole*

Defendant argues the trial court considered the wrong criteria in denying the petitions. This argument comes in two parts. First, defendant argues the trial court erred in considering his past performance on post-release community supervision, probation, and parole. Second, defendant argues the trial court failed to consider the primary purposes of mental health diversion. We are not persuaded.

Section 1001.36 vests the trial court with broad discretion to consider any factors it deems appropriate when assessing dangerousness, including "the defendant's violence and criminal history" and "the current charged offense." (§ 1001.36, subd. (c)(4).) Here, defendant's criminal history appears to include multiple violations of post-release community supervision, probation, and parole. Indeed, the charged offenses in both

7

cases occurred while defendant was on post-release community supervision, and defendant admitted the evasion in case No. 22FE015703 was motivated by his desire to avoid a probation search. The trial court could reasonably consider defendant's poor performance on post-release community supervision, probation, and parole in determining whether he posed an unreasonable risk to public safety.

Defendant's authorities—*Whitmill* and *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882 (*Sarmiento*)—do not suggest otherwise. Neither case precludes the trial court from considering defendant's past performance on post-release community supervision, probation, or parole as an aspect of defendant's criminal history bearing on dangerousness. As relevant here, *Whitmill* and *Sarmiento* merely hold that the trial court cannot rely on a defendant's past performance *in lieu* of dangerousness.

In *Whitmill,* the defendant was a veteran with post-traumatic stress disorder. (*Whitmill, supra,* 86 Cal.App.5th at p. 1142.) He got into an altercation with a friend in an alleyway. (*Ibid.*) He told the friend, " 'Don't walk up on me' " and fired a shot in the air. (*Ibid.*) He then approached his girlfriend and said, " 'Bitch, I will kill you.' " (*Id.* at p. 1143.) The trial court denied diversion, finding the use of a gun accompanied by the criminal threat showed an unreasonable risk to public safety. (*Id.* at p. 1147.) Although the defendant's criminal record did not include crimes of violence, the trial court found he would need to abstain from substance abuse to mitigate the risk of danger, and it would be unreasonable to expect him to do so. (*Id.* at p. 1146.) The trial court explained, " 'what I have here is a defendant who had three years in the county jail suspended. And that's designed to create a strong disincentive to commit any new crime. That does not give me great confidence.' " (*Ibid.*)

The Court of Appeal reversed for two reasons: First, the court concluded the evidence was insufficient to support the trial court's finding that the defendant posed an unreasonable risk of committing a super strike if treated in the community. (*Whitmill, supra,* 86 Cal.App.5th at p. 1156.) Second, the court said the trial court "imposed

8

incorrect standards in denying diversion." (*Ibid.*)  Defendant emphasizes this second point, which was directed to the trial court's comment that the suspended sentence had not been sufficiently motivating.  (*Id.* at p. 1155.)

Elaborating on the trial court's error, the *Whitmill* court explained:  "We find nothing in the diversion statute suggesting the Legislature intended to give courts discretion to deny diversion simply because diversion is or may be less motivating than probation or prison. . . .  The trial court's conclusion that diversion is insufficiently motivating is simply a challenge to the underlying premise of diversion itself.  The Legislature has concluded that diversion has sufficient safeguards when the defendant does not pose an unreasonable risk of danger to public safety and is otherwise eligible and suitable for diversion; courts cannot override that determination just because a grant of probation in the past has not 'motivated' defendants to overcome symptoms of mental illness which contribute to violations of the law."  (*Whitmill, supra,* 86 Cal.App.5th at p. 1155.)  The *Whitmill* court also found "the trial court's discussion of objectives to deter defendant from committing future offenses demonstrates it relied on general sentencing objectives set forth in rule 4.410 of the California Rules of Court," rather than "the primary purposes of the mental health diversion statute as set forth in section 1001.35." (*Id.* at p. 1156.)

In *Sarmiento*, the defendant suffered from posttraumatic stress disorder, depression, and stimulant use disorder specific to methamphetamine.  (*Sarmiento, supra,* 98 Cal.App.5th at p. 887.)  She walked into a liquor store and handed the clerk a note reading, " 'Let me get the money.' "  (*Id.* at p. 886.)  She was charged with attempted robbery and petitioned for mental health diversion.  (*Ibid.*)  The trial court denied diversion for two reasons:  First, the trial court found the defendant's failure to remain drug-free after previously participating in substance abuse treatment indicated " 'she would not respond well to mental health treatment.' "  (*Id.* at p. 887.)  Second, the trial court found the defendant, though unlikely to commit a super strike offense, nevertheless

" 'pose[d] an unreasonable risk of danger to the public.' " (*Ibid.*) The Court of Appeal rejected both rationales. (*Id.* at pp. 894-895.)

With respect to the first, the *Sarmiento* court found the "the trial court failed to appreciate the distinction between different types of treatment, conflating substance abuse recovery with therapy and medication directed at PTSD and depression." (*Sarmiento, supra,* 98 Cal.App.5th at pp. 893-894.) Though the defendant's prior attempts at drug treatment were arguably "unsuccessful," she had never received treatment for her mental health conditions, which drove her to substance abuse as a form of self-medication. (*Id.* at p. 894.) With respect to the second, the *Sarmiento* court found the trial court erred in concluding that residual concerns for public safety not amounting to a likelihood that the defendant would commit a super strike offense could justify the denial of diversion. (*Id.* at p. 896.) Although the trial court retains residual discretion to deny diversion even where threshold eligibility and suitability requirements have been met, the court could not "reject a request for diversion based on an alternative meaning of 'public safety' inconsistent with the specific statutory definition in section 1001.36, subdivision (c)(4)." (*Ibid.*) Rather, the *Sarmiento* court said, "the scope of trial court discretion in applying the statute must be informed by an appreciation for the crucial role of the Legislature in setting criminal justice policy." (*Id.* at p. 898.)

*Whitmill* and *Sarmiento* are distinguishable. Unlike the defendant in *Whitmill*, "who negligently fired a single shot in the air away from those nearby," or the defendant in *Sarmiento,* who handed the liquor store clerk a note written on a napkin, defendant led a sheriff's deputy on a high-speed chase through a densely populated area during rush hour. (*Whitmill, supra,* 86 Cal.App.5th at p. 1155; *Sarmiento, supra,* 98 Cal.App.5th at p. 886.) He then subjected his wife to a 48-hour ordeal in which he twice grabbed her by the throat, causing her to fear for her life. As we shall discuss, this evidence supports the trial court's determination that defendant would pose an unreasonable risk of danger to the public. For now, we note the circumstances surrounding the charged offenses here

were more egregious—and more dangerous—than those in *Whitmill* or *Sarmiento*. (§ 1001.36, subd. (c)(4).)  That being so, the trial court had no need to rely on evidentiary proxies for dangerousness, such as defendant's past performance on supervision or attitude towards diversion.  (Cf. *Whitmill, supra,* at p. 1146; *Sarmiento, supra,* at pp. 886-887.)  Instead, the trial court appropriately considered defendant's past performance as part of his overall criminal history, which demonstrated both dangerousness and an inability to conform his conduct to society's rules.  (§ 1001.36, subd. (c)(4).)  And, though defendant's past performance caused the trial court to question the sincerity of his "consent" to diversion, the court ultimately and properly viewed the issue as one of risk to the public, not sincerity.  (See *Sarmiento, supra,* at p. 898 ["the question is not whether Sarmiento 'deserved' the opportunity for treatment.  The Legislature has determined that in most cases, the community will be safer if defendants like Sarmiento receive mental health treatment so that they will pose fewer risks to the community both now and in the future"]; see also *Vaughn v. Superior Court of Los Angeles County* (2024) 105 Cal.App.5th 124, 139 [§ 1001.36 "does not require a defendant to display a particular attitude or disposition to persuade the trial court that he or she is worthy of mental health diversion"].)  Neither *Whitmill* nor *Sarmiento* supports defendant's claim of error.

Nor do we see any support for defendant's claim that the trial court failed to consider the purposes of mental health diversion.  Although the trial court may not have discussed the purposes of diversion at any length, nothing suggests the court misunderstood them, or failed to appreciate the scope of its discretion.  We do not presume the trial court misunderstood or misapplied its discretion unless the record affirmatively demonstrates error.  (*People v. Garcia* (1987) 195 Cal.App.3d 191, 198.)  It does not.

C.      *Substantial Evidence Supports the Trial Court's Dangerousness Finding*

Defendant next challenges the sufficiency of the evidence supporting the trial court's finding that he poses an unreasonable risk of danger to public safety.  As

11

previously discussed, section 1001.36 defines "unreasonable risk of danger to public safety" by reference to section 1170.18. (§ 1001.36, subd. (c)(4) [the trial court must be satisfied that the "defendant will not pose an unreasonable risk of danger to public safety, as defined in [§] 1170.18"].) Section 1170.18, in turn, defines "unreasonable risk of danger to public safety" as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of" section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) "The violent felonies encompassed in this definition 'are known as "super strikes" and includes murder [and] attempted murder.'" (*Moine, supra,* 62 Cal.App.5th at p. 449.) "Thus, the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies." (*Id.* at p. 450.)

The trial court determined defendant "presents an unreasonable risk of committing a super strike based on the totality of the evidence." That determination was properly based on defendant's criminal history and the circumstances surrounding the current charged offenses, which together support the conclusion that he poses an unreasonable risk to public safety. (§ 1001.36, subd. (c)(4).)

Defendant's current charged offenses involve behavior dangerous to the lives of those around him. In case No. 22FE015703, defendant drove at high speeds through city streets, creating a substantial risk of harm to anyone and everyone who happened to be in his path. Although defendant's conduct may have fallen short of a super strike, the trial court obviously thought he could have killed someone and could have reasonably concluded defendant's conduct demonstrated such extreme indifference to human life that he could easily cross the line from felony evasion to murder or attempted murder. That conclusion would have been reinforced by the circumstances surrounding case No. 23FE012935, where defendant again came close to killing another person; this time, his wife. And unlike the felony evasion, which might have been chalked up to an impulsive act in the heat of the moment, the false imprisonment unfolded over a period of days and involved multiple assaults on his wife, at least one of which caused her to fear for her

12

life.  The trial court could have reasonably viewed the felony evasion and false imprisonment as dangerous to public safety in and of themselves, and as demonstrating an escalation in violent behavior towards others, which would be all too likely to end with the commission a super-strike offense.  (See, e.g., *People v. Hall* (2016) 247 Cal.App.4th 1255, 1264 [affirming trial court's unreasonable risk of danger finding based on " 'continual and consistent escalation' " in the defendant's criminal activity].)  That escalation, combined with defendant's history of violating post-release community supervision, probation, and parole, gave the trial court sufficient reason to believe he posed an unreasonable risk of danger if treated in the community.  No abuse of discretion appears.

### III.  DISPOSITION

The order denying mental health diversion is affirmed.


/S/

_____

RENNER, J.



We concur:


/S/

_____

MAURO, Acting P. J.


/S/

_____

BOULWARE EURIE, J.


13